UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CRAIG ALEXANDER,

                                              Plaintiff,

    v.                                                             6:17-CV-725
                                                                                (GTS/ATB)

STATE OF NEW YORK, et al.,

                                              Defendants.

CRAIG ALEXANDER, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed on July 5, 2017 by pro se plaintiff Craig Alexander. (Dkt. No. 1 ("Compl.")). Plaintiff has also filed an application to proceed in forma pauperis ("IFP"), together with his Inmate Authorization Form.[1] (Dkt. No. 2). Plaintiff has also requested appointment of counsel. (Compl. ¶ VII - Relief ¶ 1).

**I.**    <u>**IFP Application**</u>

As to plaintiff's IFP application, the court finds that plaintiff has demonstrated sufficient economic need, and he has filed the appropriate forms. Therefore, plaintiff has met the financial criteria for proceeding IFP.

However, in addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or

---

[1] Plaintiff is currently incarcerated.

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. <u>Complaint</u>

Most of plaintiff's complaint seems to involve facts that led to his federal criminal conviction, for which he is currently incarcerated. Although it appears that plaintiff was arrested by Oneida Indian Police Officers, they transferred him to the New York State Police, who conducted an investigation.[2] (Compl. *generally*). Plaintiff alleges that on June 25, 2015, he was at the Turning Stone Casino in Oneida, New York. (Compl. (Statement of Facts ("SOF") ¶ 1). Plaintiff states that he was approached by defendants Nolan and Jones,[3] and plaintiff ran away from these defendants "to a nearby bathroom" because plaintiff feared arrest. *Id.* Plaintiff claims that once they were all in the bathroom, defendant Nolan ordered plaintiff to put his hands up on the wall. (Compl. SOF ¶ 2). Plaintiff told defendants Nolan and Jones that he did not have a weapon, but defendant Nolan allegedly placed his gun against plaintiff's head, grabbed plaintiff's arm, and struck plaintiff with the butt of his gun in his upper back while slamming plaintiff's face into the wall. (*Id.*)

Plaintiff claims that defendant Nolan wrestled[4] plaintiff to the ground, punching him in the ribs. (Compl. SOF ¶ 3). Defendant Nolan then yelled obscenities at the plaintiff, told him not to move, kneed him in the small of his back, and dragged him out of the bathroom. (Compl. SOF ¶¶ 3-4) Plaintiff states that he was subsequently

---

[2] Plaintiff's case was ultimately prosecuted federally in the Northern District of New York.

[3] Plaintiff states that defendant Robert Nolan is an Oneida Indian Nation Police Investigator, and defendant David Jones is an Oneida Indian Nation Police Officer. (Compl. at 2 ("Defendants").

[4] The complaint actually states that defendant Nolan "wreathed Plaintiff to the ground . . . ." (Compl. SOF ¶ 3). Clearly such a statement does not make sense, and the court has interpreted the complaint liberally.

3

transferred to the custody of the New York State Police and brought to the Oneida State Police Barracks. (Compl. SOF ¶ 5).

Plaintiff alleges that he was placed in a small interrogation room and handcuffed to a chair. (Compl. SOF ¶ 6). The room had a single entrance and contained a desk and two chairs. (*Id.*) Plaintiff states that defendant Andrew Wilmont, a New York State Police Investigator entered the room, sat down at the desk, and began asking plaintiff questions. (Compl. SOF ¶ 7). Although plaintiff states that he repeatedly requested an attorney and a telephone call, defendant Wilmont denied all his requests for approximately twenty minutes. (*Id.*) Plaintiff states that, during this time, no one ever read him his *Miranda* rights, nor did defendant Wilmont stop questioning plaintiff when he "invoked his right to counsel." (*Id.*) Then defendant Wilmont left the room with plaintiff still handcuffed to the chair. (Compl. SOF ¶ 8). Plaintiff alleges that defendant Wilmont returned periodically to ask plaintiff more questions, "seeking to induce or entice him to answer." (*Id.*) Plaintiff claims that defendant Wilmont "grew more and more upset" when plaintiff continued to refuse to answer the questions and again asked for an attorney. (*Id.*)

Plaintiff states that he was "eventually" told that he could use the telephone, "but only after formal booking procedures." (Compl. SOF ¶ 9). Plaintiff states that defendant Wilmont continued to question plaintiff during those procedures. Plaintiff states that he became "frazzled and annoyed and spontaneously offered several statements. . . " regarding certain "cards" that apparently were in his possession.[5] (*Id.*)

---

[5] Plaintiff states that he "spontaneously" told defendant Wilmont that plaintiff did not "know where the cards came from. [He] found them. Someone gave them to [him]." (Compl. SOF ¶ 9).

4

Plaintiff claims that after his "outburst," defendant Wilmont left the room, returned with a "'Miranda Waiver Form,'" and allegedly *told* plaintiff to sign it, but plaintiff refused. (Compl. SOF ¶ 10).

Plaintiff states that, at approximately 1:30 p.m., defendant Wilmont asked plaintiff what he wanted done with his car. (Compl. SOF ¶ 11). Plaintiff told defendant Wilmont that he wanted to return the car to the rental agency, and asked to use the telephone to make those arrangements, but defendant Wilmont refused. Plaintiff states that he "declined the offer of towing the vehicle." (*Id.*) Defendant Wilmont asked plaintiff if there were any weapons or narcotics in the car, and plaintiff assured him that neither of those things were in the vehicle. (Compl. SOF ¶ 12). Defendant Wilmont asked plaintiff for his consent to search the car, but plaintiff refused. Defendant Wilmont asked plaintiff if he had "something to hide," and he told plaintiff that he could "'get a warrant with just one phone call,'" but plaintiff continued to refuse to give his consent. (*Id.*) Defendant told plaintiff that the officers were "'going to have to do an inventory search anyway,'" and that plaintiff would just "'save [them] some time.'" (*Id.*)

Plaintiff states that "after pretending to call a tow company, plaintiff told Defendant Wilmont to leave the vehicle there [,] and he would make arrangements for its removal from the jailhouse." (Compl. SOF ¶ 13). Defendant Wilmont stated that this option was not possible because the plaintiff's car was "'endangering public safety.'" (*Id.*) Defendant Wilmont called the Casino and confirmed that the management did not want the car to be left on the Casino premises. Defendant

5

Wilmont then told his partner defendant O'Hanlon to "return to the casino and 'make sure nothing dangerous is in the car.'" (*Id.*) Plaintiff claims that, shortly after defendant O'Hanlon left, defendant Wilmont called O'Hanlon to tell him that plaintiff "had consented to [the] search of the car," when, in fact, that was not true. (*Id.*)

Plaintiff claims that defendant O'Hanlon later returned to the barracks and "declared [that] the car was clean," and that it contained only "'clothes and stuff in the trunk.'" (Compl. SOF ¶ 14). Defendant Wilmont again attempted to have plaintiff sign consent to search and "Inventory" forms, but plaintiff refused. Defendant Wilmont allegedly told plaintiff that he did not need an attorney, "this" was nothing criminal, the car was not used in the commission of a crime, and he could not "'charge [plaintiff] with anything in the car.'" (*Id.*) Plaintiff states that defendant Wilmont instructed defendant O'Hanlon to return to the car "'to make sure there's nothing in there.'" (*Id.*) Defendant O'Hanlon returned a short time later and allegedly stated that "The guy's good. Just a couple credit cards in the console.'" (*Id.*)

Plaintiff claims that defendant Wilmont then looked at the plaintiff and told him that Wilmont was "not playing" and that they would be there "all day." (Compl. SOF ¶ 15). Defendant Wilmont called defendant O'Hanlon into the room and had him close the door. (*Id.*) Defendant O'Hanlon allegedly stood directly behind the plaintiff, who was still handcuffed to the chair. Plaintiff claims that defendant Wilmont then stood up, rested his hand on the butt of his weapon "in a threatening manner," and told plaintiff that this was "'the last time'" he was going to tell plaintiff, and that he was not "'asking no more.'" (*Id.*)

6

Plaintiff claims that defendant Wilmont's conduct made plaintiff "immediately fear[] for his safety," because he believed that defendant O'Hanlon "intended to cause him serious bodily harm if he did not comply with his request to sign the consent forms." (Compl. SOF ¶ 16). Plaintiff believed that defendant Wilmont was "threatening his life . . . if he did not sign the consent forms." Defendants Wilmont and O'Hanlon "continued to loom over Plaintiff in a threatening manner until Plaintiff signed the consent forms." (*Id.*)

Plaintiff claims that the credit cards and other items found by defendant O'Hanlon in the plaintiff's car were "later used by the US Attorney as evidence to substantiate federal criminal charges and used at Plaintiff's trial." (Compl. SOF ¶ 17). Plaintiff alleges that the "aggressive, coercive, and threatening behavior" of defendants Wilmont and O'Hanlon caused plaintiff to experience "severe mental anguish and suffering." (Compl. SOF ¶ 18). Plaintiff claims that, as a result, he suffers from flashbacks, nightmares, and continued stress from the threat to his life," and these symptoms continue to affect him "to this day." (*Id.*)

Plaintiff seeks substantial monetary relief, appointed counsel, an order declaring the defendants' conduct to be in violation of the United States Constitution, an order directing the defendant State of New York to ensure that all policies regarding appropriate interrogation techniques be followed at the Oneida State Police Barracks and at all State Police Barracks throughout New York.

### III. Claims Related to Plaintiff's Criminal Conviction (Claims One - Three)

#### A. Legal Standards

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87. The rule in *Heck* applies whether the conviction is federal or state.[6] *See Carpenter v. Comm'r of IRS*, No. 3:13-CV-563, 2016 WL 7238792, at *4 (D. Conn. Dec. 14, 2016) (noting that *Heck* would apply to the plaintiff's case, when the plaintiff was convicted in federal court).

#### B. Application

Plaintiff alleges that his Fourth Amendment rights were violated when defendants Wilmont and O'Hanlon tricked and coerced plaintiff into consenting to a search of his rental car, in which credit cards were found that formed part of the basis for his federal conviction. Plaintiff claims that the search was conducted without probable cause, and over plaintiff's "assertions" that there were no weapons or

---

[6] This case is a little unusual because plaintiff was arrested by Indian and New York State law enforcement officials, but his prosecution and conviction were in federal court. If plaintiff had been arrested by federal authorities, he would be bringing an action pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Carpenter, supra* at *1 (suits against individual federal officials for alleged constitutional violations are brought pursuant to *Bivens*). However, because he was arrested and is making claims against state officials, to the extent that he can, he has properly brought the action under section 1983.

narcotics in the vehicle. (Compl. ¶ V - Statement of Claim ("SOC") # 1). Plaintiff states that the evidence was used at trial against him.

Plaintiff also claims that his Sixth Amendment rights were violated when defendant Wilmont refused to allow plaintiff to speak with an attorney, notwithstanding several requests to cease questioning and allow plaintiff to call a lawyer. Plaintiff claims that this conduct caused plaintiff to "spontaneously" make incriminating statements. (*Id.* SOC # 2). Plaintiff also alleges that the "State of New York" failed to adequately train, manage, or supervise defendants Wilmont and O'Hanlon to "ensure" that the state's "policies and interrogation techniques" were fully understood and followed in the Oneida State Police Barracks. (*Id.* SOC # 3). Plaintiff was convicted in the Northern District of New York of the charges resulting from the discovery of the credit cards in his possession, and he concedes that his direct appeal of the conviction is still pending in the Second Circuit Court of Appeals. (Compl. ¶ IV - Previous Lawsuits).

A finding in plaintiff's favor regarding the alleged Fourth or Sixth Amendment violations would certainly impact the validity of the trial and the conviction in plaintiff's case, which clearly has not been reversed or called into question in any way.[7] Thus, any claims relating to defendants Wilmont, O'Hanlon, and the State of New York

---

[7] The alleged invalidity of the vehicle search and the alleged involuntary statements were the subjects of suppression motions before Chief Judge Suddaby, who denied motions to suppress the plaintiff's statements and all the evidence found on plaintiff and in the vehicle. *United States v. Alexander*, No. 5:14-CR-453 (N.D.N.Y.) (Dkt. Nos. 42, 47, 50).

9

which reflect on plaintiff's conviction must be dismissed.[8] The claims against the individual defendants may be dismissed without prejudice, but may not be brought again, unless and until, the criminal conviction is reversed. In addition, plaintiff's damage claims against the State of New York must be dismissed with prejudice based on Eleventh Amendment immunity. *See Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004) (*Heck* applied to dismiss claims against individual officers without prejudice, but the State of New York would be entitled to Eleventh Amendment immunity in any event).

## IV. Excessive Force (Claims Four-Five)

Plaintiff alleges that defendants Nolan and Jones, who plaintiff states are Oneida Indian Nation Officers, used excessive force on plaintiff during his arrest, and prior to being turned over to the New York State Police. This claim would not be barred by *Heck* because it bears no relationship to plaintiff's conviction, and no relationship to any evidence that was obtained by the New York State Police.

United States Constitutional amendments do not constrain Indian Tribes, which are regarded as separate sovereigns pre-existing the Federal Constitution. *Bruette v. Knope*, 554 F. Supp. 301, 304 (E.D. Wis. 1983) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)). In addition, "[t]he common law immunity from suit enjoyed by Indian tribes extends to . . . tribal policemen and effectively shields them in their ***official capacities*** from actions, either for injunctive or monetary relief brought

---

[8] The court notes that the caption of the complaint states that plaintiff is suing "unknown officers." However, there are no statements of fact against "unknown officers," either Oneida Nation Officers or State Police Officers. Thus, to the extent that plaintiff has added "unknown officers" to the list of defendants, the complaint must be dismissed as against these individuals without prejudice.

10

pursuant to 42 U.S.C. § 1983 . . . ." *Id.* (citing inter alia *Santa Clara Pueblo*, 436 U.S. at 59-72) (emphasis added). The court in *Bruette* dismissed an excessive force claim by individuals against tribal police officers in their official capacities. *Id.* Thus, plaintiff's attempt to sue the officers in their official capacities fails based on the tribe's sovereign immunity. The same is true to the extent that plaintiff is attempting to sue the Oneida Indian Nation Police and the Oneida Indian Nation Police Bureau of Investigation.

The Supreme Court has recently held that sovereign immunity does not apply to individual capacity suits. *Lewis v. Clarke*, __ U.S. __, 137 S. Ct. 1285, 1291-92 (2017). In *Lewis,* plaintiff were suing a individual member of a Native American tribe who worked for the Mohegan Tribal Gaming Authority, and who caused a car accident while driving in the scope of his employment. *Id.* at 1290. The issue turned upon the identity of the "real party in interest," notwithstanding the Tribe's agreement to indemnify its employees. *Id.* at 1291-92. In *Lewis*, the Court used the general principles of sovereign immunity, taken from lawsuits against state and federal employees or entities. *Id.* at 1291 (citations omitted). Thus, a suit against the individual officers in this case would not be barred by tribal immunity.

Immunity does not end the analysis in this case. To state a claim under section 1983, the plaintiff must allege both that the defendants has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendants acted "under color of state law." *Rae v. City of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983. With respect to suits against the officers in their "individual capacities," it has been held that "Native American tribes and those acting under **tribal**

11

law do not act under color of state law within the meaning of section 1983. *Chapoose v. Hodel*, 831 F.2d 931, 934-35 (10th Cir. 1987) (tribal action cannot be equated to state or territorial action in order to satisfy the state action requirement which is a pre-requisite to suit under section 1983) (emphasis added).

However, in their individual capacities, Native American actors may be subject to a section 1983 claim if their actions were taken pursuant to **state** authority. The issue in this case would turn on the authority used for plaintiff's arrest at the casino. "If an individual is possessed of state authority, and purports to act under that authority, his action is state action." *Griffin v. Maryland*, 378 U.S. 130, 135 (1964) (amusement park guard deputized as a sheriff). Because there appears to be some question regarding whether tribal police officers act under color of state law for purposes of section 1983, the court will allow the excessive force claims against defendants Nolan and Jones to proceed.[9]

A review of the facts regarding the alleged excessive force shows that plaintiff has only mentioned defendant Nolan as a participant in the actual assault, although plaintiff states that he was chased into the bathroom by both defendants Nolan and

---

[9] The court notes that case law is not consistent regarding this determination, and often it depends upon the facts of the particular case and what function the trial police officer was performing. *See Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) (discussing and distinguishing sovereign immunity from state action and finding that although a section 1983 action may not be brought against an individual acting under color of tribal law, when the officers are authorized to act under either state or tribal law, they could be considered state actors). The court did not specifically decide whether the individual police officers acted under color of state law. *Id.* at 1115. Section 114 of the New York State Indian Law provides for a St. Regis Mohawk Tribal Police, and provides that the tribe waives its immunity and subjects itself to liability in federal and state courts "in accordance with the same rules of law as applied to actions against municipalities of the state of New York . . . ." N.Y. Indian Law § 114. It does not appear that any other tribe has such a specific section of law in New York State.

Jones. If the force used by Nolan was "excessive" in the constitutional sense, and defendant Jones failed to intervene, Jones could be liable for the unconstitutional conduct,[10] and because the facts are not clear from the complaint, the court will allow the excessive force/failure to intervene action to proceed against both officers.[11]

## V.     Appointment of Counsel

### A.     Legal Standards

Unlike criminal defendants, IFP plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *Wali v. One Source Co.*, No. 07-7550, 2009 WL 3170110, at *1 (S.D.N.Y. Sept. 30, 2009) (citation omitted). "Appointment" of counsel in a civil action involves the court requesting an attorney to represent an IFP party pro bono under 28 U.S.C. § 1915(a)(1). *Id.* In determining whether to make such a request for the indigent party, courts do not utilize a bright-line test. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered.

As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just

---

[10] *See Walker v. City of New York*, No. 11-CV-314, 2014 WL 12652345, at *12 (E.D.N.Y. Sept. 3, 2014) (discussing standards for constitutionally excessive force and failure to intervene).

[11] Although this court is recommending that the excessive force claim proceed, it makes no finding regarding whether the claims can survive properly supported motions to dismiss or for summary judgment.

determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

However, prior to the court engaging in the above analysis, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing Hodge, 802 F.2d at 61). Such a showing has not yet been made in this action. In addition, this case was only recently commenced, and that the only facts upon which this court could base a decision as to whether this lawsuit is of substance are the facts stated in the plaintiff's complaint. Where there are merely unsupported allegations, the moving party does not meet the first requirement imposed by the Second Circuit for appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96-Civ.-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997). Thus, for the above reasons, this court will deny appointment of counsel without prejudice at this time.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application for IFP status (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED**, that all claims against **NYS POLICE INVESTIGATOR WILMOT, NYS POLICE OFFICER O'HANLON, AND "SEVERAL UNKNOWN**

14

**OTHERS" be DISMISSED WITHOUT PREJUDICE as discussed above**, and it is

**RECOMMENDED**, that all claims against the **STATE OF NEW YORK, THE ONEIDA NATION POLICE, and THE ONEIDA INDIAN NATION POLICE BUREAU OF INVESTIGATION be DISMISSED WITH PREJUDICE** based on sovereign immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), and it is

**ORDERED**, that, after Chief Judge Suddaby acts on this court's Recommendations, the Clerk shall issue a summons and forward it, along with a copy of the complaint and a copy of this Order to the United States Marshal for service on defendants **NOLAN and JONES**, and it is

**ORDERED**, that, after service, a formal response to the complaint be filed by defendants **NOLAN and JONES** or defendants' counsel as provided for in the Federal Rules of Civil Procedure, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Compl. ¶ VII - Relief Sought ¶ 1) is **DENIED WITHOUT PREJUDICE**, and it is

**ORDERED**, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. <u>**Any letter or other document received by the Clerk or the Court which does not include a certificate of service, clearly stating that an identical copy was served upon all opposing parties or their attorneys, may be stricken from the record**</u>.

Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action and shall keep the court and

opposing counsel apprised of any change of address.  All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

**ORDERED**, that the Clerk serve a copy of this Order upon plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 12, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge