UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CRAIG ALEXANDER,

                Plaintiff,

v.

ROBERT NOLAN, Oneida Indian Nation
Police Investigator; and DAVID JONES,
Oneida Indian Nation Police Officer,

                Defendants,
_____

6:17-CV-0725
(GTS/ATB)

APPEARANCES:

CRAIG ALEXANDER
  Plaintiff, *Pro Se*
Fort Dix Federal Correctional Institution
Post Office Box 2000
Joint Base MDL, New Jersey 08640

BARCLAY DAMON LLP
  Counsel for Defendants
125 East Jefferson Street
Syracuse, New York 13202

OF COUNSEL:

GABRIEL M. NUGENT, ESQ.
CASSANDRA L. SANTORO, ESQ.

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this civil rights action filed by Craig Alexander ("Plaintiff") against Robert Nolan, Oneida Indian Nation Police Investigator, and David Jones, Oneida Indian Nation Police Officer ("Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 17.) For the reasons set forth below, Defendants' motion is granted.

I. **RELEVANT BACKGROUND**

   A. **Plaintiff's Claims**

   Generally, liberally construed, Plaintiff's Complaint asserts the following two causes of action: (1) a claim that Defendant Jones used excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment; and (2) a claim that Defendant Nolan failed to intervene during the use of excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment. (Dkt. No. 1.)

   B. **Statement of Undisputed Material Facts**

   Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response. (*Compare* Dkt. No. 17, Attach. 2 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 23 [Pl.'s Response].)

   1. Plaintiff was deposed on March 27, 2018, at the Fort Dix Correctional Facility in Fort Dix, New Jersey.

   2. In his deposition, Plaintiff admitted that his excessive force cause of action against Defendants is based on the sworn allegations contained on the bottom of page 4 of his verified Complaint and paragraph numbers 1 through 4 on page 5 of his verified Complaint.[1]

   3. Those sworn allegations concern events that occurred when Plaintiff was at the Turning Stone Resort Casino (the "Turning Stone") on July 25, 2014.

   4. In addition, the events giving rise to Plaintiff's cause of action against Defendants were captured by video cameras located at the Turning Stone.

---

[1] The Court notes that, in these paragraphs, Plaintiff swore, *inter alia*, that, inside the bathroom, Defendant Nolan pushed Plaintiff against a wall, drew his gun and struck Plaintiff with it in the back of Plaintiff's head. (Dkt. No. 1, at 4, ¶ 2.)

5. In his deposition, Plaintiff admitted he received and had an opportunity to review the video footage before the deposition.[2]

6. Based on his conduct at the Turning Stone on July 25, 2014, for which he was later convicted, Defendants initially approached him.

7. More specifically, when Plaintiff was at the cage window, attempting to make "cash withdrawals" with "gift cards," using a driver's license belonging to Jareen Chinnery–a man Plaintiff did not know–Defendants, officers of the Oneida Indian Nation Police Department ("OINP"), approached him.

8. When Officer Nolan got close to him, Plaintiff began to walk away from the cage window. As Plaintiff was walking away, Officer Nolan, who was on the phone, signaled to Plaintiff, and then Plaintiff began running.

9. Defendants briefly chased Plaintiff through the casino floor.

10. Plaintiff admitted Defendants had a good-faith basis to believe he was committing a crime and to approach him.

11. Plaintiff also admitted that it was appropriate for Defendants to pursue him after he began running.

12. Officer Jones caught up with Plaintiff in an open area adjacent to a pair of bathrooms on the casino floor.

13. Although Plaintiff swears in his verified Complaint that his arrest occurred inside the bathroom and that he was pushed up against a wall inside the bathroom, neither Plaintiff nor Defendants ever entered the bathroom.

---

[2] The Court notes that, in his deposition, Plaintiff also stated, "I got a chance to glance at it [the video], but not to my best, how I really wanted to." (Dkt. No. 17, Attach. 3, at 24.)

3

14. The time stamp on the video from the Turning Stone that captured the events at issue shows Officer Jones cornering Plaintiff outside the bathrooms at 9:45:39 a.m.

15. Officer Jones approached Plaintiff and grabbed him. He did not strike Plaintiff, draw his weapon, or slam Plaintiff into a wall during this time. Officer Jones quickly brought Plaintiff to the ground.

16. The time stamp on the video shows Plaintiff on the ground at 9:45:44 a.m. Five seconds elapsed between the time Officer Jones reached Plaintiff and the time Plaintiff was on the ground.

17. Officer Jones did not make physical contact with Plaintiff until 9:45:41 a.m., only three seconds before he brought Plaintiff to the ground.

18. Once Plaintiff was on the ground, Defendants restrained him and put him in handcuffs.

19. Plaintiff admitted that, under the circumstances, it was appropriate for Defendants to apprehend him and place him in handcuffs.

20. The time stamp on the video shows that Officer Jones finished handcuffing Plaintiff at 9:46:05 a.m.

21. The entire encounter, from the time Officer Jones reached Plaintiff to the time he was fully handcuffed, lasted twenty-six seconds.

22. Plaintiff claimed that the event happened "real quick," lasting about thirty seconds from the end of the chase until he was placed in handcuffs.

23. Plaintiff also said, "It was obviously quick. It wasn't really nothing."

24. Plaintiff admitted he did not identify himself to Defendants.

25. After handcuffing Plaintiff, Defendants inspected Plaintiff's person, searching his pockets and patting him down while he was still on the ground.

26. Although Plaintiff claimed he told Defendants he did not possess a weapon, he admitted it was appropriate for Defendants to search him for a weapon instead of taking his word that he was without a weapon.

27. The time stamp on the video shows that Defendants began searching Plaintiff at 9:46:06 a.m. and finished at 9:46:42 a.m.

28. When Defendants completed their search, they brought Plaintiff to his feet.

29. The time stamp on the video shows that Plaintiff was on his feet at 9:46:50 a.m.

30. Defendants then walked Plaintiff back through the casino, off its main floor, and to the OINP office located in the Turning Stone. In footage showing Defendants and Plaintiff walking away after the arrest, none of the men appear to have been involved in a taxing physical struggle.

31. Plaintiff admitted that his claim against Defendants is based solely on the approximately thirty-second encounter outside the bathrooms:

> Q: But your claim really only relates to what happened at the end of the chase; is that right?
> A: Yes.
> Q: Not anything that happened during when you walked from the place where you were cuffed to the other floor; is that right?
> A: No.
> Q: So really that 30-second period, that's really the time that relates to your claim?
> A: Yes.

32. The video footage demonstrates Defendants did not draw their weapons at any time during the encounter.

33. Although he swore in his verified Complaint that he was struck with a gun, Plaintiff recanted that allegation at his deposition:

> Q: But did you see a gun brandished?
> A: Yeah, I think I recollect a gun being brandished.
> Q: Did it hit you in the back of the head? How did you see it?
> A: Something struck me in the back of my head.
> Q: So you don't know if it was a gun?
> A: No, I don't know if it was a gun.

34. During the encounter, Plaintiff did not cry out for help or cry out in pain.

35. In his deposition, Plaintiff admitted he suffered no physical injuries during the encounter with Defendants:

> Q: Do you have any claim about any injuries that happened to you?
> A: Physical injuries?
> Q: Yes.
> A: No, no physical injuries.

36. Although Plaintiff claimed he had been struck in the back of the head with an object, he admitted in his deposition that it had left no mark on him.

37. Plaintiff claimed that his neck was sore, but that he had no scars, breaks of skin, or bruising, and that he did not seek medical treatment following the incident.

38. Plaintiff also admitted that he "didn't really complain about [his injuries]." Plaintiff had no difficulty walking after he was placed in handcuffs.

39. Defendants transferred Plaintiff to the custody of the New York State Police Department, and he was asked about the incident. In response, Plaintiff did not mention any injuries.

**C. Parties' Briefing on Defendants' Motion for Summary Judgment**

    **1. Defendants' Memorandum of Law-in-Chief**

Generally, in support of their motion to for summary judgment, Defendants assert three arguments. (*See generally* Dkt. No. 17, Attach. 1 [Defs.' Mem. of Law].)

First, Defendants argue that the force they used was reasonable and appropriate under the circumstances. (*Id.*) More specifically, Defendants argue that, given Plaintiff's conduct, crime and obvious flight risk, it was objectively reasonable for Defendant Jones to grab him, bring him to the ground, and handcuff him. (*Id.*) In addition, Plaintiff conceded this point during his deposition. (*Id.*) Defendants argue that the surveillance video shows a brief chase, followed by a brief struggle during which Plaintiff appears to not resist while he was taken to the ground and handcuffed. (*Id.*) Defendants argue that the video shows that Plaintiff never entered a bathroom, Defendants did not use a gun, Defendants did not knee Plaintiff in the back, and Defendants did not punch Plaintiff. (*Id.*) Defendants argue that the video proves that Defendants did not use excessive force against Plaintiff. (*Id.*)

Second, Defendants argue that Plaintiff suffered no injury. (*Id.*) More specifically, Defendants argue that the existence of a bodily injury is necessary to prevail on an excessive force claim. (*Id.*) Defendants argue that, while the injury does not need to be permanent or severe, if it is *de minimis*, there is no excessive force claim. (*Id.*) Defendants argue that Plaintiff admitted in his deposition that he suffered no injuries, scars, breaks, or bruises, aside from neck soreness, as a result of his encounter with Defendants, and that Plaintiff's failure to seek medical treatment following the encounter is further evidence that he did not sustain more than *de minimis* injuries and was not subjected to excessive force. (*Id.*)

Third, Defendants argue that allegations of verbal harassment (such as Plaintiff's allegations that Defendants yelled at Plaintiff and made racially inappropriate remarks during his arrest) cannot support an excessive force claim. (*Id.*)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff asserts three arguments. (*See generally* Dkt. No. 23 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that there is an issue of fact with regard to whether the force used was reasonable. (*Id.*) More specifically, Plaintiff argues that the tactics used by Defendants to effect his arrest were "cruel[] [and] . . . fall far afield of what society and the courts deem appropriate." (*Id.*) Plaintiff argues that the video shows Defendant Jones "brutally smash Plaintiff's head into the floor after he had already been subdued" at 9:45:45 a.m. (*Id.*) As a result, Plaintiff argues that the reasonableness of the force used is a question of material fact that should be decided by the jury. (*Id.*)

Second, Plaintiff argues that, while it is undisputed that he did not suffer a physical injury under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), a jury should consider whether his psychological and emotion injuries are sufficient to warrant an award of damages because our society has undergone "progressive changes . . . with regards to mental health and emotional trauma" since enacting the PLRA in 1996. (*Id.*)[3]

---

[3] The Court notes that the PLRA's limitation on recovery for mental or emotional injury without a prior showing of physical injury is applicable to a "civil action brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody." 42 U.S.C. § 1997e(e). "[T]he Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, which is designed to deter the filing of frivolous litigation *against prison officials*, applies to both pretrial detainees and convicted prisoners." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2476 (2015) (emphasis added). However, Defendants are not prison officials and Plaintiff's allegations relate to an incident that occurred before he was a pretrial detainee or

Third, Plaintiff argues that, even though he is not entitled to an award of actual damages because he did not suffer a physical injury pursuant to the PLRA, he should still be permitted to seek nominal and punitive damages for the violation of his constitutional rights. (*Id.*)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert two arguments. (Dkt. No. 24 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff fails to identify a material fact in dispute. (*Id.*) More specifically, Defendants argue that the brief, methodical, and largely peaceful apprehension depicted in the surveillance video is not susceptible to Plaintiff's dramatic interpretation because, if he had been handled with the brutality he describes, there would be some evidence of an injury, even if superficial. (*Id.*) However, Defendants argue, Plaintiff admits he suffered no physical injuries. (*Id.*)

Second, Defendants argue that Plaintiff concedes in his opposition memorandum of law that a physical injury is an element of an excessive force claim pursuant to 42 U.S.C. § 1983. (*Id.*) More specifically, Defendants argue that, even if a material factual dispute exists as to whether Defendants used force that was not reasonable, summary judgment would be appropriate because Plaintiff cannot establish the physical-injury element of his claim. (*Id.*) Defendants argue that, even if the Court were inclined to consider Plaintiff's request to alter the current law and credit his emotional injuries, Plaintiff fails to either allege or establish an emotional injury. (*Id.*) Finally, Defendants argue that Plaintiff cannot obtain even nominal damages because he cannot establish liability. (*Id.*)

---

convicted prisoner. (*See generally* Dkt. No. 1.) As a result, the Court finds that the PLRA is inapplicable here.

## II.     GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-

---

[4]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[5] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[6] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[7]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[5] *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[6] *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[7] *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[8]–even when the non-movant was proceeding *pro se*.[9]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[10] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[8] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[9] *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[10] *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

## III. ANALYSIS

After carefully considering the matter, the Court grants Defendants' motion for summary judgment for the reasons stated in their memoranda of law. (Dkt. No. 17, Attach. 1; Dkt. No. 24.) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' reasons.

### A. Plaintiff's Excessive Force Claim Against Defendant Jones

"[A]ll claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 [1968]). "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing

13

*Terry*, 392 U.S. at 20-22). "'Not every push or shove, even if may later seem unnecessary in the judge's chambers,' . . . violates the Fourth Amendment." *Id*. (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 [2d Cir. 1973]).

"A *de minimis* use of force will rarely suffice to state a Constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Moreover, "de minimis injury can serve as conclusive evidence that de minimis force was used." *Regels v. Giardono,* 113 F. Supp. 3d 574, 599 (N.D.N.Y. 2015) (Suddaby, J.) (*quoting Washpon v. Parr*, 561 F. Supp. 2d 394, 407 [S.D.N.Y. 2008] [internal quotation marks omitted]). "Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." *Regels,* 113 F. Supp. 3d at 599 (*quoting Milo v. City of New York*, 59 F. Supp. 3d 513, 522 [E.D.N.Y. 2014] [internal quotation marks omitted]).

Here, it is undisputed that, immediately before any physical contact with Defendants, Plaintiff attempted to evade arrest by running away. (Dkt. No. 17, Attach. 3, at 12-15, 18; Dkt. No. 23, at 2.) As a result, the need existed for at least some force to subdue him. *Regels*, 113 F. Supp. 3d at 599. Furthermore, *some* force was all that was used: Plaintiff was taken to the ground, the incident did not last long, and he did not sustain a physical injury. (Dkt. No. 17, Attach. 3, at 19, 37-39, 43.) Finally, a careful review of the surveillance video reveals that, at 9:45:45 a.m., no rational fact-finder could conclude that a post-apprehension "brutal[] smash[ing]" of Plaintiff's head occurred; rather, Defendant Jones returned Plaintiff's head to the rug after Plaintiff lifted it from there. (Dkt. No. 19.)

For all of these reasons, Plaintiff's excessive force claim is dismissed.

## B. Plaintiff's Failure-to-Intervene Claim

To the extent that Plaintiff has asserted a failure-to-intervene claim against Defendant Nolan, it must be dismissed because there was no use of excessive force in which he could have intervened.

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 [2d Cir. 1994]). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson*, 17 F.3d at 557.

To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene. *Curley v. Vil. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); *Henry v. Dinelle*, 10-CV-0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.).

As set forth above in Part III.A. of this Decision and Order, there remain no constitutional claims upon which a failure to intervene claim could attach. *See B. v. City of New York*, 14-CV-1021, 2016 WL 4530455, at *16 (E.D.N.Y. Aug. 29, 2016) ("Plaintiffs' failure to intervene

claims fail in the absence of an adequately pled underlying constitutional violation.") (collecting cases); *Ladoucier v. City of New York*, 10-CV-5089, 2011 WL 2206735, at *4 (S.D.N.Y. June 6, 2011) ("In addition to his false arrest claim, LaDoucier also alleges failure to intervene . . . . [which] requires the existence of an underlying constitutional violation–such as false arrest . . . .") (collecting cases). Plaintiff cannot establish that a constitutional violation was committed as required to establish a failure to intervene claim. *See Jackson v. Vill. Of Ilion, New York*, 14-CV-0563 2016 WL 126392, at *8 (N.D.N.Y. Jan. 11, 2016) (Hurd, J.) (holding that, where no reasonable juror could conclude that either officer's conduct violated the plaintiff's constitutional rights, the plaintiff's excessive force and failure to intervene claims must be dismissed).

For all of these reasons, Plaintiff's failure-to-intervene claim is dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court shall close this action.

The Court certifies that an appeal from this Decision and Order would not be taken in good faith.

Dated: December 18, 2018
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge